UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON,

                                        Plaintiff,

            - against -

ALLIED PROFESSIONALS INSURANCE
COMPANY,

                                        Defendant.

**ORDER**

20 Civ. 8572 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

This is an insurance action brought by Certain Underwriters at Lloyd's, London

("Lloyd's") against Defendant Allied Professionals Insurance Company ("Allied") in which

Lloyd's seeks declaratory relief regarding its obligations to defend and indemnify Allied under a

professional liability insurance policy Lloyd's issued to Allied. (See Am. Cmplt. (Dkt. No. 23)

¶¶ 45-65)  Allied has moved to dismiss for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3)

and 28 U.S.C. § 1406, or, in the alternative, to transfer this case to the U.S. District Court for the

Central District of California or the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a).

(Dkt. No. 26)

For the reasons stated below, Allied's motion to transfer will be granted, and this

case will be transferred to the U.S. District Court for the Central District of California.

## BACKGROUND

### I.   PRIOR PROCEEDINGS[1]

Allied – an Arizona corporation headquartered in Orange County, California – issued an insurance policy to non-party National Chiropractic Council (the "Allied Policy"), through which non-party Anthony W. Battillo, a chiropractor in Florida, is a named insured. (See Am. Cmplt. (Dkt. No. 23) ¶¶ 7-8)  The Allied Policy limit is $1 million per claim, inclusive of defense fees and costs.  (Id. ¶ 9)

In August 2010, Anibal Gomez sued Battillo in the circuit court of Miami-Dade County, Florida "for injuries sustained from a negligent chiropractic adjustment." (Id. ¶ 10) Allied provided Battillo with a defense against Gomez's malpractice lawsuit.  (Id. ¶ 11)  On three occasions between May 2, 2014 and August 10, 2017, Gomez made a settlement demand to Allied and Battillo in which Gomez offered to settle his claims for $1 million.  (Id. ¶¶ 12-13, 16-17)  Because of defense fees and costs, Gomez's settlement demands were in excess of the Allied Policy limit.  (See id. ¶¶ 14, 18)

On October 31, 2018, Allied submitted an application (the "Application") to Certain Underwriters at Lloyd's, London – an unincorporated association comprised of seven United Kingdom-based insurance syndicates – for professional liability insurance coverage on a claims-made and reported basis.  (Id. ¶¶ 5, 27; see id., Ex. D ("Application") (Dkt. No. 23-4)) The policy Allied sought to obtain from Lloyd's would provide coverage for, inter alia, "extra-

---

[1]   The following undisputed facts are taken from the Amended Complaint and the parties' declarations and may be considered for purposes of resolving Allied's motion.  See Allianz Glob. Corp. & Specialty v. Chiswick Bridge, No. 13 Civ. 7559 (RA), 2014 WL 6469027, at *2 (S.D.N.Y. Nov. 17, 2014).

contractual claims in addition to or outside of a contract of insurance[,] such as 'bad faith' insurance claims against insurers."  (See Schroeder Aff. (Dkt. No. 26-3) ¶ 3)

        The Application that Allied completed and submitted to Lloyd's directs Allied to list "any act . . . or circumstance which may give rise to a claim which may fall within the scope of this proposed insurance."  The Application states that "any matter or information required to be disclosed in response to the above question[] . . . and any claim arising from or related to such matter or information, is excluded from all proposed insurance." (Application (Dkt. No. 23-4) at 16[2] (capitalization omitted); Am. Cmplt. (Dkt. No. 23) ¶¶ 31-32)  The Application also requires Allied to notify the insurer "immediately . . . in writing" "if the information supplied on this application changes between the date the application is executed and the time the proposed insurance policy is bound or coverage commences," and states that the insurer "reserves its rights to modify or withdraw its proposal." (Application (Dkt. No. 23-4) at 17 (capitalization omitted); Am. Cmplt. (Dkt. No. 23) ¶ 29)

        In the completed Application, Allied did not notify Lloyd's of Gomez's three settlement demands, nor of the fact that Gomez's demands exceeded the limits of the Allied Policy.  (Am. Cmplt. (Dkt. No. 23) ¶ 33; Application (Dkt. No. 23-4))

        On November 14, 2018, a final judgment was entered against Battillo for approximately $3.7 million.  (Am. Cmplt. (Dkt. No. 23) ¶ 21)

        On December 18, 2018, Allied submitted a letter to Lloyd's in further support of its Application.  (See id. ¶ 35, Ex. E)  In this letter, Allied did not inform Lloyd's of Gomez's settlement demands, the fact that those demands exceeded the limit of the Allied Policy, or that

---

[2]  All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

the judgment entered in favor of Gomez against Battillo exceeded the limit of the Allied Policy. (Id. ¶¶ 33-35)

In reliance on Allied's representations during the application process, Lloyd's issued a professional liability insurance policy to Allied (the "Lloyd's Policy"), with a $5 million professional liability limit and a $300,000 retention for extra-contractual claims, effective from December 18, 2018 to December 18, 2019.  (Id. ¶¶ 37-39; id., Ex. F ("Lloyd's Policy") (Dkt. No. 23-6))

On November 2019, Gomez sued Allied in the circuit court of Miami-Dade County, Florida, alleging common law bad faith claims against Allied for failing to settle the malpractice lawsuit, which led to a judgment in excess of the Allied Policy limit.  (Am. Cmplt. (Dkt. No. 23 ¶¶ 23-25)  Allied removed the suit to the U.S. District for the Southern District of Florida, and then successfully moved to compel arbitration in California.[3]  (See id. ¶ 26)

In an October 31, 2019 letter, Allied tendered the Gomez bad faith claim to Lloyd's through Lloyds' California-based administrator, Premier Claims Management.  Allied requested a defense and indemnity pursuant to the Lloyd's Policy.  (See Schroeder Aff., Ex. 9 (Dkt. No. 26-11))  Lloyd's is currently handling Gomez's bad faith claim against Allied, pursuant to a complete reservation of rights.  (Am. Cmplt. (Dkt. No. 23) ¶ 44)

On February 18, 2020, a final judgment for fees and costs was entered against Battillo for approximately $842,000.[4]  (Id. ¶ 22)

---

[3]  At the time Allied filed the instant motion, the arbitration proceeding was pending in California.  (Schroeder Aff. (Dkt. No. 26-3) ¶ 11)

[4]  At the time Allied filed the instant motion, the February 18, 2020 judgment was on appeal. (Id. ¶ 9)

## II.   THE INSTANT CASE

The Complaint was filed on October 14, 2020 (Dkt. Nos. 1-2),[5] and an Amended Complaint was filed on February 22, 2021 (Am. Cmplt. (Dkt. No. 23)).  In the Amended Complaint, Lloyd's seeks a declaration that (1) its duty to defend and indemnify Allied with respect to Gomez's bad faith action does not become effective unless and until Allied exhausts the Lloyd's Policy's $300,000 retention; (2) Lloyd's has no duty to defend and indemnify Allied with respect to Gomez's bad faith action, because the claims were served on Allied before the policy period commenced; and (3) the Lloyd's Policy is void, and subject to rescission, because Allied made material misrepresentations by failing to disclose the excess judgment Gomez had obtained against Battillo.  (Am. Cmplt. (Dkt. No. 23) ¶¶ 45-65)

Subject matter jurisdiction is premised on diversity of citizenship.[6]  (Id. ¶ 2)

On March 25, 2021, Allied moved to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406 or, in the alternative, to transfer this case pursuant to 28 U.S.C. § 1404 to the U.S. District Court for the Central District of California or the Southern District of Florida.  (Dkt. No. 26)

---

[5]  The Complaint (Dkt. No. 1) was filed on October 14, 2020, but was rejected for a filing deficiency.  It was refiled on October 15, 2020.  (Dkt. No. 2)

[6]  Although Allied initially argued that the Lloyd's underwriters had not sufficiently alleged that they were each diverse from Allied, or that at least one of the underwriters satisfied the $75,000 amount in controversy (see Feb. 4, 2021 Jt. Ltr. (Dkt. No. 20) at 3), Allied withdrew this argument after the filing of the Amended Complaint.  (See March 2, 2021 Def. Ltr. (Dkt. No. 24))  The Amended Complaint alleges that (1) each of the underwriters is a citizen of the United Kingdom, and is not a citizen of California or Arizona, where Allied is headquartered and incorporated; and (2) the respective interests each of the underwriters owns exceed the $75,000 threshold.  (See Am. Cmplt. (Dkt. No. 23) ¶¶ 5-7)

## DISCUSSION

## I.    LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(3), a district court may dismiss an action based on improper venue, and pursuant to 28 U.S.C. § 1406(a),

> [t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

In considering a motion to dismiss for improper venue, a court must credit the complaint's factual allegations and draw all reasonable inferences in favor of plaintiff. Cartier v. Micha, Inc., No. 06 Civ. 4699 (DC), 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). A district court "may rely on the pleadings and affidavits submitted in connection with the motion, but cannot resolve any disputed material fact in the movant's favor unless an evidentiary hearing is held." Allianz, 2014 WL 6469027, at *2 (citing Martinez v. Bloomberg LP, 740 F.3d 211, 216-17 (2d Cir. 2014)). While it is a plaintiff's burden to demonstrate that venue is proper, "[a]bsent a formal hearing on the motion, a plaintiff need only make a prima facie showing of venue." Cartier, 2007 WL 1187188, at *2 (citing Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005)).

28 U.S.C. § 1391(b) – which governs venue – provides that

[a] civil action may be brought in –

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3).

The Second Circuit has cautioned that courts are "required to construe the venue statute strictly." Glasbrenner, 417 F.3d at 357 (citation omitted). Accordingly, "for venue to be proper [where defendants do not reside in the district where the case was filed], significant events . . . must have occurred in the district in question, even if other material events occurred elsewhere." Id. (emphasis omitted). "Courts making venue determinations in contract disputes have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Id. (quotation marks and citations omitted); see also Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 686 (E.D.N.Y. 2005).

## II.   **ANALYSIS**

Here, Allied argues that "a substantial, indeed overwhelming, number of events or omissions which give rise to [Lloyd's'] claims arose in the Central District of California, or, to a lesser extent, in the Southern District of Florida." And – according to Allied – "[n]either New York nor the Southern District have any substantial relationship to the operative facts of this claim, which involves a California insurer seeking coverage for its alleged acts and omissions relating to a chiropractic malpractice action litigated in the courts of the State of Florida." (Def. Br. (Dkt. No. 26-2) at 5-6)

In this regard, Allied states asserts that:

- the Lloyd's Policy was procured in California through the efforts of an Ohio insurance broker, Quadrant Insurance Managers, which negotiated with Verve Risk Partners, LLC, a London-based corporation;

- on December 26, 2018, Quadrant supplied Allied with a draft quotation for the policy that Quadrant obtained from Verve Risk Partners;

- Michael Schroeder, Allied's vice president and general counsel – while participating in negotiations for the Lloyd's Policy by telephone and through email messages to Quadrant – was located in Allied's offices in Orange County, California;

- the Lloyd's Policy was delivered to Schroeder at Allied's offices in Orange County, California, and he signed the Lloyd's Policy while located in Allied's offices in Orange County, California;

- premiums for the Lloyd's Policy were billed to Allied's offices in Orange County, California, and payments were remitted from those offices;

- Lloyd's is adjusting Allied's claim for coverage through the services of its agent, Premier Claims Management, whose office is located in Santa Ana, California, which is also within Orange County, California.

(Def. Br. (Dkt. No. 26-2) at 5-6, 15-16; Schroeder Aff. (Dkt. No. 26-3) ¶¶ 4-5)

Allied further contends that "[a]ll activities covered by the policy relate to decisions made at [Allied's] primary place of business in Orange County, California, which is within the geographical parameters of the Central District of California, and "[a]ny alleged breaches of the insurance contract . . . would have occurred in California." (Def. Br. (Dkt. No. 26-2) at 6)

Allied also states that it intends to assert – in the form of an affirmative defense and counterclaims – that Lloyd's waived any right to deny coverage to Allied, and breached its duty of good faith and fair dealing. According to Allied, "[t]he most essential witnesses to support [Allied's] intended waiver defense and counterclaims are employees of Premier, who reside in California."[7] (Id.; see also Schroeder Aff. (Dkt. No. 26-3) ¶ 25 (listing the names of California- and Florida-based witnesses, and the nature of their expected testimony))

---

[7] Allied's intended waiver defense and counterclaims arise out of alleged actions by Premier and Lloyd's attorneys in Florida, who "fail[ed] to review and handle the Gomez bad faith action on a timely basis; . . . improperly inject[ed] themselves into the defense of the Gomez claim and then assert[ed] a reservation of rights regarding coverage for the Gomez claim; improperly agree[d] to a Florida mediation with Gomez's counsel . . . when the underlying policy required arbitration in California[,] . . . where the law favored [Allied's] interest; [and] fail[ed] to consult [Allied]

In response, Lloyd's argues that venue in this District is proper because (1) "the place of performance under [the Lloyd's Policy] is 'anywhere in the world'"[8]; (2) Allied "is registered in New York as a federal Risk Retention Group[,] is recognized as such by the New York Department of Financial Services[,]" and "has over 4,000 insureds in New York"[9]; (3) Lloyd's can only be served with service of process through the law firm "Mendes and Mount" at 750 Seventh Avenue in New York[10]; (4) the Lloyd's Policy contains a New York choice of law provision[11]; and (5) the Lloyd's Policy states that Lloyd's "'is not licensed by the state of California and is not subject to its supervision.'"[12]  (Pltf. Opp. (Dkt. No. 27) at 2-6)

Assuming arguendo that these assertions are correct, they do not address the key issue, which is whether "a substantial part of the events or omissions giving rise to the claim

---

regarding the selection of defense counsel and [in] disclosing confidential information to plaintiff's counsel in the Gomez bad faith claim."  (See Schroeder Aff. (Dkt. No. 26-3) ¶ 22; see also id. ¶¶ 13-21)

[8] See Lloyd's Policy (Dkt. No. 23-6) at 28 ("This Policy shall apply to any Claim made against any Insured anywhere in the world.").

[9] See Pltf. Opp. (Dkt. No. 27) at 2 (quotation marks and emphasis omitted) (quoting Wadsworth v. Allied Pros. Ins. Co., 748 F.3d 100, 102 (2d Cir. 2014)).

[10] See Lloyd's Policy (Dkt. No. 23-6) at 4 ("It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm of Mendes and Mount, 750 Seventh Avenue, New York 10019-6829, U.S.A, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.").

[11] See id. at 51 ("[I]t is hereby understood and agreed by both the Assured and Underwriters that any dispute concerning the interpretation of this Policy shall be governed by the laws of New York.").

[12] See id. at 9 ("The insurance company with which this coverage has been placed is not licensed by the State of California and is not subject to its supervision.  In the event of insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty fund.").

occurred, or a substantial part of property that is the subject of the action is situated," in the Southern District of New York.  See 28 U.S.C. § 1391(b)(2).[13]  Indeed, in an insurance dispute such as this, "'the site of negotiations, purchase, and delivery of the policy in question'" are the most important factors for determining venue.  See 632 Metacom, Inc. v. Certain Underwriters at Lloyd's, No. 20-CV-3905 (RA), 2021 WL 394847, at *4 (S.D.N.Y. Feb. 4, 2021) (quoting Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014)).

As to the site of negotiations, purchase, and delivery of the policy, Lloyd's argues that the Lloyd's Policy was signed by Verve Risk Partners in London, and was not signed by Allied in California (see Pltf. Opp. (Dkt. No. 27) at 3 (citing Lloyd's Policy (Dkt. No. 23-6) at 9)), as Allied represents.  (See Schroeder Aff. (Dkt. No. 26-3) ¶ 4).  But Lloyd's does not dispute that Allied "signed the application for insurance in California." (Pltf. Opp. (Dkt. No. 27) at 3) The Application is, of course, a critical aspect of Lloyd's claims against Allied.  (See Am. Cmplt. (Dkt. No. 23) ¶¶ 27-36).  And Lloyd's does not otherwise challenge Allied's account of the circumstances in which the Lloyd's Policy was obtained.  Indeed, Lloyd's acknowledges that many of the events relevant to the issuance of the Lloyd's Policy took place in California:

> The policy was issued and delivered to Allied in California.  The policy was negotiated and purchased between London, Ohio, and California.  Specifically, Verve Risk Partners, LLP . . . and its broker, Assured Partners[,] are located in London.  The producer/intermediary, Quadrant Insurance Managers . . . , is located in Westerville, Ohio.  Quadrant negotiated terms with Allied (California) and Verve (London).  The order to bind was issued from Allied (California) to Quadrant (Ohio), which relayed the order to Verve and/or Assured Partners (London).

(Am. Cmplt. (Dkt. No. 23) ¶ 37 n.2 (citations omitted))

---

[13]  Although Lloyd's argues that Allied is registered as a Risk Retention Group in New York (Pltf. Opp. (Dkt. No. 27) at 2), Lloyd's has not argued that Allied "resides" in the Southern District of New York under 28 U.S.C § 1391(b)(1).

However, Lloyd's disputes the significance of Allied's argument that "the most essential witnesses" regarding Allied's expected waiver defense and counterclaims are Premier's California-based employees, noting that Allied has not yet asserted a counterclaim or affirmative defense, and that Allied's own employees will address the rescission claim. (Pltf. Opp. (Dkt. No. 27) at 4)  But Lloyd's arguments miss the mark.  Even if the Court were to set aside Allied's expected affirmative defense and counterclaims, Lloyd's has not shown that any events giving rise to the claims in this case took place in New York, or that any witnesses are located in New York.  Instead, it is undisputed that (1) Allied applied for and negotiated for the Lloyd's Policy from its offices in California, and that any misrepresentation arising out of the application process took place in California; (2) the Lloyd's Policy was delivered to Allied at its offices in California; (3) Allied paid the premiums due on the Lloyd's Policy from its offices in California; and (4) Allied tendered its claim for coverage to Premier – Lloyd's agent in California.

In sum, Lloyd's has not made a <u>prima facie</u> showing that any event or omission giving rise to the claims in this case – let alone a "substantial part of the events or omissions giving rise to the claims" – took place in New York.  Accordingly, venue is not proper in the Southern District of New York.

Having determined that venue is not proper in this District, this Court has discretion to transfer or dismiss the case.  "If venue is improper in the federal district court in which the action was filed, the decision whether to transfer or dismiss is evaluated under 28 U.S.C. § 1406(a) and 'lies within the sound discretion of the district court.'"  <u>Pisani v. Diener</u>, No. 07-CV-5118 JFB/ARL, 2009 WL 749893, at *8 (E.D.N.Y. Mar. 17, 2009) (quoting <u>Minnette v. Time Warner</u>, 997 F.2d 1023, 1026 (2d Cir. 1993)).  Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or

11

district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).[14]

"A 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum." Gonzalez v. Hasty, 651 F.3d 318, 324 (2d Cir. 2011) (quoting Moreno-Bravo v. Gonzales, 463 F.3d 253, 263 (2d Cir. 2006)). Transfer is appropriate where a party "'request[s] that [an] action be transferred to another forum where [the] action otherwise could have been brought . . . [,] instead of being dismissed.'" See Micromem Techs., Inc. v. Dreifus Assocs. Ltd., No. 14-CV-9145 (LAK), 2015 WL 8375190, at *7 & n.69 (S.D.N.Y. Dec. 8, 2015).

Here, Allied has requested that – if this Court determines that venue is not proper in this District, and does not dismiss the action – the case be transferred to the Central District of California or the Southern District of Florida. As discussed above, Allied has shown that this action could have been brought in the Central District of California, where a substantial portion of the events and omissions leading to the claims in this action took place. Accordingly, this case will be transferred to the Central District of California.[15]

---

[14] As an alternative to dismissing this case under 28 U.S.C. § 1406(a), Allied has moved to transfer under 28 U.S.C. § 1404(a). However, Section 1404(a) applies in cases where venue is proper in the plaintiff's chosen forum, and is thus inapplicable here. Accordingly, this Court will analyze Allied's transfer motion under Section 1406(a).

[15] Lloyd's argues that Allied "should be estopped from requesting a transfer to California after attempting to transfer this action to Florida." (Pltf. Opp. (Dkt. No. 27) at 1) This argument is frivolous. In Allied's November 30, 2020 pre-motion letter seeking leave to file the instant motion, Allied sought dismissal of this case or a transfer to the Southern District of Florida. In that letter, Allied argued that the Southern District of Florida is the proper venue for this case, because the Gomez malpractice and bad faith actions were filed there. (See Nov. 30, 2020 Def. Ltr. (Dkt. No. 13)) At a subsequent conference, however, this Court pointed out that the malpractice and bad faith actions are not relevant to the venue determination, because "the locus[] of operative facts for an insurance coverage issue" is where the insurance policy was negotiated, purchased, or delivered. (Feb. 11, 2021 Tr., at 2-3) It was in this context that Allied filed the instant motion requesting that, if this case is not dismissed, it be transferred to either the

## **CONCLUSION**

For the reasons stated above, Allied's motion to transfer is granted.  The Clerk of

Court is directed to terminate the motion (Dkt. No. 26), to close this case, and to transfer this

action to the Clerk of the U.S. District Court for the Central District of California.

Dated: New York, New York
       September 28, 2022

                                            SO ORDERED.

                                            _____
                                            Paul G. Gardephe
                                            United States District Judge

_____

Central District of California or the Southern District of Florida.  (See Def. Reply Br. (Dkt. No.
28-1) at 8-9)